UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JEFFERY C. MURPHY,                    )
                                      )
        *Plaintiff*,                  )
                                      )
v.                                    )         No. 1:15-cv-126-SKL
                                      )
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
        *Defendant*.                  )

## ORDER

Plaintiff Jeffery C. Murphy ("Plaintiff") brought this action pursuant to 42 U.S.C. §

405(g) seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying his disability insurance benefits ("DIB"). Each party

has moved for summary judgment [Docs. 14 & 16] with supporting briefs [Docs. 15 & 17]. This

matter is now ripe. For the reasons stated below, Plaintiff's motion for summary judgment [Doc.

14] will be **DENIED**; the Commissioner's motion for summary judgment [Doc. 16] will be

**GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.      ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for DIB on December 8, 2005, alleging disability beginning

September 30, 2003 (Transcript [Doc. 10] ("Tr.") 842-44).[1] Plaintiff's claim was denied initially

and upon reconsideration at the agency level (Tr. 657-58, 659, 704-06, 708-09). After a hearing

was held, administrative law judge ("ALJ") Robert L. Erwin found on February 20, 2008, that

Plaintiff was not under a disability as defined in the Social Security Act ("Act") (Tr. 663-71).

Plaintiff requested that the Appeals Council review the unfavorable decision (Tr. 717). On May

11, 2010, the Appeals Council vacated the ALJ's decision and remanded the case for further

---

[1] Plaintiff reported he last worked on September 15, 2003, so for purposes of the December 23, 2013 opinion, the ALJ considered disability as of September 15, 2003 (Tr. 530).

consideration (Tr. 672-74). After additional hearings, ALJ Erwin issued a decision on August 2, 2011, finding Plaintiff was not disabled (Tr. 678-94). Plaintiff again sought review of the ALJ's decision by the Appeals Council (Tr. 799). On April 19, 2013, the Appeals Council vacated the ALJ's August 2, 2011 decision and remanded the case to a new ALJ for further consideration (Tr. 699-702). ALJ Carey Jobe held a hearing on November 26, 2013, during which Plaintiff was represented by an attorney (Tr. 552-79).[2] ALJ Jobe issued a decision on December 23, 2013, in which he determined Plaintiff was not under a "disability" as defined in the Act (Tr. 530-45). Once again, Plaintiff timely requested that the Appeals Council review the ALJ's unfavorable decision (Tr. 1). On March 26, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's December 23, 2013 decision the final decision of the Commissioner (Tr. 1-3). Plaintiff timely filed the instant action [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.  Education and Employment Background

Plaintiff was born in 1966 and was 42 years old on the date last insured, December 31, 2008 (Tr. 544, 842). Plaintiff has at least a high school education and is able to communicate in English (Tr. 544, 556). Plaintiff's past relevant work history includes a maintenance mechanic and a water treatment plant operator (Tr. 572).

### B.  Medical Records

Plaintiff alleged disability due to cysts on his tailbone, chronic sinusitis, migraines, right shoulder pain, right knee pain, and arthritis (Tr. 869). The administrative record contains extensive medical records, primarily from the Department of Veterans Affairs ("VA") medical clinics dating back to 2002, which have been summarized by the parties and the ALJ. Only the

---

[2] Plaintiff was also represented by counsel during the January 16, 2008 and July 6, 2011 hearings.

portions of Plaintiff's medical records relevant to the parties' arguments will be addressed within the respective sections of the analysis below, but all relevant records have been reviewed.

### C. Hearing Testimony

The Court has carefully reviewed the transcripts of the testimony at the hearings. While it is not necessary to summarize the testimony herein, the testimony will be addressed as appropriate within the respective sections of the Court's analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

**B.     The ALJ's Findings**

Plaintiff meets the insured status requirements through December 31, 2008 (Tr. 532). The relevant period for consideration of whether Plaintiff was disabled is from September 15, 2003 through December 31, 2008 (Tr. 530). At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 15, 2003, the alleged onset date, through December 31, 2008, his date last insured (Tr. 532). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of both shoulders, degenerative joint disease of the right knee, a history of migraine headaches, a major depressive disorder, and a substance abuse disorder (Tr. 532-33). The ALJ determined that Plaintiff had the non-severe impairments of sinusitis, allergies, stomach problems, hypertension, and chronic idiopathic urticarial (Tr. 533, 536). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 533-34). The ALJ found Plaintiff had the residual

functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) except that he required a sit/stand option at about 45 to 60 minute intervals. He had no limitations on the use of the hands for handling, fingering, or feeling but he was limited to occasional overhead reaching with both arms. He needed to avoid concentrated exposure to hazards (heights, machinery, etc.). Mentally, he was limited to simple and some detailed tasks (SVP 1-3), which involved only occasional contact with the public and coworkers and infrequent work changes.

(Tr. 535-44).[3]  At step four, the ALJ found Plaintiff was unable to perform his past relevant work through the date last insured (Tr. 544).  At step five, the ALJ noted that Plaintiff was born in 1966 and was 42 years old on the date last insured, which is defined as a younger individual, had at least a high school education, and was able to communicate in English (Tr. 544).

After considering Plaintiff's age, education, RFC, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("Grids"), and considering the testimony of a vocational expert, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 544-45).  These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act at any time from September 15, 2003, through December 31, 2008, the date last insured (Tr. 545).

## IV.    ANALYSIS

Plaintiff alleges there is not substantial evidence to support the ALJ's finding that Plaintiff was not disabled.  More specifically, Plaintiff argues that the ALJ erred by failing to properly weigh the alleged 100% disability determination by the VA, and thus the case must be

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds" and "requires a good deal of walking or standing or . . . sitting most of the time".  20 C.F.R. §§ 404.1567(b).

remanded [Doc. 15 at Page ID # 1530-31]. Additionally, Plaintiff contends that the ALJ erred in weighing two consultative exams, one physical and the other psychological, that were performed in March 2011. Plaintiff argues that the ALJ improperly assigned "little weight" to the 2011 opinion of the consultative physical examiner, which found multiple limitations and would have supported a determination of disability, because it occurred beyond Plaintiff's date last insured, while assigning "great weight" to 2011 opinions of the consultative psychological mental examiner, which also occurred beyond Plaintiff's date last insured, because it was consistent with a previous consultative exam performed in 2006 [*id.* at Page ID # 1532].

Defendant counters that substantial evidence supports the ALJ's evaluation of the opinion evidence [Doc. 17 at Page ID # 1542]. Defendant argues that the ALJ did not ignore the Plaintiff's VA disability rating as the ALJ considered all of the VA medical records in adjudicating Plaintiff's claim [*id.* at Page ID # 1542-43]. Defendant contends that Plaintiff has shown no harm from the ALJ's consideration of the VA disability rating because the contents of a 2006 VA award letter do not support Plaintiff's claim of total disability [*id.* at Page ID # 1546]. Defendant further argues that the ALJ properly discounted a 2011 consultative physical examination performed after Plaintiff's date last insured as the limitations assessed were inconsistent with the medical evidence and Plaintiff's own testimony and activities during the relevant period and thus there was no basis for relating the limitations back to 2008 [*id.* at Page ID # 1547-48]. Finally, Defendant argues that the ALJ properly gave great weight to the 2011 consultative psychological examination because the findings were consistent with the 2006 consultative psychological examination performed prior to Plaintiff's date last insured [*id.* at Page ID # 1549-50].

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (internal citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised

and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.      Consideration of the VA's Disability Determination

In his opinion, the ALJ stated that he considered Plaintiff's allegation that he had been granted 100% disability by the VA and cited Exhibit 11F/12 (Tr. 543). Exhibit 11F/12 is a June 20, 2007 treatment note from the Mountain Home VA Medical Center which states that Plaintiff "[r]elates that he was approved for 100% disability which has allowed him to pay his bills and feel financially secure" (Tr. 1192). The ALJ commented that the VA letter awarding 100% disability was not contained in the administrative record, but "[r]egardless, [he was] not bound by VA disability determinations or that of any other governmental agency" because "the VA uses much different standards for their determinations" (Tr. 543).

Plaintiff argues that the VA determination supporting 100% disability was in the record and that the ALJ overlooked it, which is reversible error [Doc. 15 at Page ID # 1530-31]. Plaintiff cites an August 27, 2006 VA decision letter and accompanying Ruling Decision dated June 30, 2006 (collectively "August 2006 VA decision") in support of his position that he was awarded 100% permanent disability (Tr. 906-08). Defendant counters that the ALJ did not ignore the alleged 100% disability rating and clearly considered it along with all of the VA medical records in adjudicating Plaintiff's claim [Doc. 17 at Page ID 1542-43]. Defendant also argues that Plaintiff has shown no harm in the ALJ's failure to reference or specifically discuss the August 2006 VA decision because that decision did not support Plaintiff's claims for total disability under the SSA's rules and regulations [*id.* at Page ID # 1546].

The August 2006 VA decision granted Plaintiff a temporary 100% disability determination for a two-month period beginning August 16, 2005 "based on surgical or other treatment necessitating convalescence for degenerative changes [in the] right knee," and then a 10% disability determination from October 1, 2005, the date ending the period of convalescence, "for leg flexion which is limited to 45 degrees" (Tr. 907-08). To be entitled to disability under Title II of the Act, Plaintiff must establish a disabling impairment that lasted for twelve consecutive months. 20 C.F.R. § 404.1505(a).

The issue of whether a claimant is disabled under the Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see also* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at * 3 (Aug. 9, 2006). The SSA's regulations provide that:

> [a] decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.

20 C.F.R. § 404.1504. The ALJ is required to consider all of the evidence in the administrative record that has a bearing on the disability determination. *See* SSR 06-03p, 2006 WL 2329939, at *6; *see also* 40 C.F.R. § 404.1512(b)(5). Thus, the ALJ must consider evidence of a disability decision by another governmental agency, but it is not binding. *See* SSR 06-03p, 2006 WL 2329939, at *6. The SSA has explained that the ALJ "*should* explain the consideration given to these decisions [of other governmental agencies] in the notice of decision for hearing cases." *Id.* at *7 (emphasis added).

The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has "held that a disability rating from the Veterans Administration is entitled to consideration, but . . . [has] not specified the weight such a determination should carry when determining social security disability

9

eligibility." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013) (finding that when the ALJ stated that she was not bound by the VA's decision of 100% total and permanent disability but did consider it, the ALJ stated a proper understanding of the law); *see also LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 387 (6th Cir. 2013) ("This court has not set forth a specific standard regarding the weight the Commissioner should afford a 100% disability determination."). Thus, the ALJ must consider the VA's disability determination, but it is not entitled to any particular weight.

Here the ALJ clearly stated that, while he was not bound by the VA's disability decision, he did consider Plaintiff's allegations of a 100% VA disability determination. The ALJ then noted that the administrative record did not contain an award letter of 100% disability by the VA. As evidence of the alleged 100% permanent disability determination, Plaintiff refers only to the August 2006 VA decision, but as previously explained, this supports a temporary and partial VA disability rating. Neither party has cited in the record to a VA award letter supporting and explaining a 100% permanent disability determination, and the Court need not hunt through the voluminous record looking for one. *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (holding that "[j]udges are not like pigs, hunting for truffles that might be buried in the record.") (internal citation, quotation marks, and alteration omitted); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (noting that a district court is neither required to speculate on which portion of the record a party relies, nor is it obligated to "wade through" the record for specific facts). Even after Defendant pointed out that the August 2006 decision did not reflect a 100% permanent disability determination by the VA, Plaintiff has not cited in the administrative record to any VA award letter or decision finding Plaintiff 100% permanently disabled during the relevant time period.

Plaintiff also states in his brief that the record "evidences the Plaintiff's service connected 80% impairment rating [Doc. 15 at Page ID #1524-25], and cites a page in an August 30, 2005 treatment note (Tr. 1023). Plaintiff does not cite to any VA disability determination letter or any evidence in the record that provides an explanation for the VA's disability rating in this treatment note, and the treatment note does not explain the basis for the determination. When an ALJ makes a broad statement that he considered another agency's disability determination in accordance with the SSA rules, courts have generally "held that when the other agency's decision presents only bare conclusions or approval of disability benefits, without any medical opinions or underlying reasons or standards supporting such a finding, an ALJ's failure to consider that decision is harmless." *Vanderpool v. Comm'r of Soc. Sec.*, No. 12-13727, 2013 WL 5450276, at *1 (E.D. Mich. Sept. 30, 2013); *see also Stokes v. Comm'r of Soc. Sec.*, No. 1:13-cv-487, 2015 WL 803087, at *8 n.4 (W.D. Mich. Feb. 25, 2015) ("A VA disability decision which cites no supporting medical evidence and is "essentially a form opinion, unaccompanied by any written report' provides the ALJ with very little to 'consider.' Because the VA gave a bare statement of a conclusion . . ., it would have been, at most, harmless error on the present record if the ALJ's opinion had not mentioned the VA's decision."). As previously discussed, the Court is not required to hunt through the approximately 1,400 page administrative record for an explanation. Plaintiff has merely cited to conclusory statements of the VA's 100% disability rating unaccompanied by medical evidence for the VA's determination.

To the extent that Plaintiff is arguing the ALJ was required specifically to discuss his consideration of a temporary, two-month 100% disability determination and then a 10% disability determination and failure to do so amounts to error, Plaintiff has not cited any authority supporting such a stringent position. In fact, the cases cited by Plaintiff address the SSA's consideration of, or failure to consider, the VA's decision to award a claimant 100% permanent

11

disability rating and a State's determination that a claimant was disabled.  *See LaRiccia*, 549 F. App'x at 387-88 (involving a disability rating from the VA of 100% based on all of claimant's service-connected conditions); *King v. Comm'r of Soc. Sec.*, 779 F. Supp. 2d 721, 725-26 (E.D. Mich. 2011) (involving a determination by the VA that the claimant had a 100% permanent disability, meaning the plaintiff was totally and permanently disabled, and remanding because the ALJ did not explain whether she accorded it any weight and if not why); *Lowery v. Commissioner of Soc. Sec.*, 886 F. Supp. 2d 700, 717 (S.D. Ohio 2012) (involving the VA's determination that the plaintiff suffered from a brain injury which was 50% disabling and that the plaintiff was unable to work based on his service-connected disabilities and therefore granting him entitlement to the 100% disability rate); *Dellerman v. Comm'r of Soc. Sec.*, No. 2:13-CV-563, 2014 WL 3734393, at *5-6 (S.D. Ohio July 28, 2014) (involving a 100% service-connected disability from the VA and remanding because no indication that the ALJ considered the evidence); *McPhee v. Comm'r of Soc. Sec.*,  No. 12-cv-13931, 2013 WL 3224420, at *13-14 (E.D. Mich. June 25, 2013) (remanding so that the ALJ could obtain if necessary additional records of the state's determination that plaintiff was unable to work and approval of disability benefits and so that the ALJ could explain the consideration he gives the state's disability determination in adjudicating whether plaintiff is disabled under the Act).  A finding of partial disability by the VA is not binding on the Commissioner nor does it show total disability.  *See Cordova v. Shalala*, No. 93-1268, 1994 WL 74032, at *1 n.3 (10th Cir. Mar. 10, 1994).

Further, as Defendant correctly argues, Plaintiff has not identified any harm that resulted from any error in the ALJ's consideration of the VA disability rating in that the August 2006 VA decision would not support his claim of total disability under the Act.  Generally "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the

12

agency's procedural lapses." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547-48 (6th Cir. 2004) (using harmless error analysis when ALJ made error of law by not following the SSA's regulations pursuant to 20 C.F.R. § 1527(d)(2) (now (c)(2)) concerning the weight to be given to a treating physician's opinion) (internal quotation marks, emphasis, and citation omitted)); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d at 654-55 (finding that remand not warranted if a claimant has not "been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses").

Accordingly, I **FIND** that, based on the ALJ's December 23, 2013 opinion, the ALJ properly considered the VA records, which included the August 2006 VA decision of temporary and partial disability and the August 2005 treatment note, and that the ALJ focused his discussion on the VA's alleged award of 100% disability which could possibly have impacted the ALJ's determination (Tr. 535-40). Neither the temporary disability determination nor the 10% disability determination in the August 2006 VA decision could establish that Plaintiff was disabled for a 12-month period and unable to perform any work-related activities which Plaintiff must prove in order to be found disabled under the SSA regulations. Additionally, a bare bones, unsupported statement in a treatment note of an 80% service-connected disability without an

explanation of, or citation to, the medical evidence supporting the VA's determination would not support the ALJ's determination of disability under the Act.[4]

I further **FIND** that any error in the ALJ's consideration of the VA disability rating, including any error resulting from the ALJ's failure to mention specifically the August 2006 VA decision in his opinion, was at most harmless in light of the fact that the VA's decision of partial or temporary disability could not have provided substantial evidence to support a decision to render Plaintiff disabled pursuant to the SSA regulations and that the parties have not cited to any evidence in the record explaining any decision by the VA to award Plaintiff a 100% disability rating.

## C.    Weighing Medical Opinions

At the request of Defendant, Plaintiff underwent two consultative exams in March 2011, over two years after Plaintiff's date last insured.  Plaintiff argues that the ALJ erred by inconsistently relying on one consultative examination that occurred after his date last insured while discounting the other [Doc. 15 at Page ID # 1532-33].  Plaintiff contends that the ALJ disregarded the consultative physical exam that supported a finding of disability on the basis that the exam was performed after the date last insured [*id.* at Page ID # 1532].  Defendant counters

---

[4] Plaintiff generally "bears the ultimate burden to prove by sufficient evidence that she [or he] is entitled to disability benefits."  *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing 20 C.F.R. § 404.1512(a)).  Plaintiff was represented by counsel during the January 16, 2008, July 6, 2011, and November 26, 2013 hearings before the ALJs.  Therefore, the ALJ did not have a "special, heightened duty" to develop the record.  *See Lambdin v. Comm'r of Soc. Sec.*, 62 F. App'x 623, 625 (6th Cir. 2003) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983)).  Plaintiff's counsel had adequate opportunity to question Plaintiff and provide the VA disability rating determination along with the VA's explanation of the medical evidence supporting the determination.  The ALJ considered all of the objective medical evidence in the administrative record and applied the SSA's rules and regulations for determining disability which are different and more stringent than the VA's standards for determining disability.  *Stokes,* 2015 WL 803087, at *8 n.4.

that the ALJ had no reason to discount the 2011 consultative psychological evaluation since it was consistent with the evidence obtained during the relevant period unlike the 2011 consultative psychological examination [Doc. 17 at Page ID # 1550].

In the 2011 consultative psychological exam, Brian R. Humphreys, Psy.D., opined that Plaintiff had no more than mild mental limitations and was able to perform simple and some detailed tasks (Tr. 543, ex. 13F, 1235).[5]  The ALJ assigned the 2011 consultative psychological exam "great weight" explaining that it was consistent with the clinical interview data and diagnosis of a consultative examination performed in 2006 (Tr. 543).  In April 2006, Martha Wike, Ph.D., conducted a psychological evaluation and opined that Plaintiff had mild impairments in his ability to understand and remember instructions, sustain attention and concentration, interact with other people, and adapt to change (Tr. 1093).  The ALJ found through December 31, 2008, his date last insured, Plaintiff could perform simple and some detailed tasks, have occasional contact with the public and co-workers, and adapt to infrequent work changes and that he was not otherwise limited to perform the mental functions required of work (Tr. 543).

Dr. Wesley Heath Giles performed a consultative physical examination in March 2011. Dr. Giles noted that Plaintiff used a cane, limped favoring his right leg, and his gait was abnormal (Tr. 1242).  He wore a brace on his right wrist, his back, and his right knee (Tr. 1242).

---

[5] Mr. Humphreys found in his mental medical assessment that:

> The claimant does not appear to be significantly limited in his abilities to understand, remember, and adapt adequately in a job setting.  He might be as much as mildly limited in his ability to concentrate and persist adequately when working with complex information, but not with simple information.  He also might be mildly limited in his ability to interact appropriately with others given his chronic anger.

(Tr. 1235).

He had difficulty with heel-toe walking, could only perform a partial knee bend, and had decreased balance (Tr. 1242). He had positive straight leg raises bilaterally and a limited range of motion in his lumbar spine, right shoulder, and right knee (Tr. 1242). He had full strength in his upper extremities and good grip strength (Tr. 1242). Dr. Giles opined that Plaintiff could stand and walk for four hours out of an eight-hour workday with unlimited sitting and he could frequently lift and carry up to 20 pounds (Tr. 1243, 1246). He further opined that Plaintiff could occasionally reach overhead, climb stairs and ramps, and balance but never stoop, kneel, crouch, crawl, or climb ladders or scaffolds (Tr. 1243, 1247-48).

The ALJ gave little weight to the 2011 consultative examination of Dr. Giles finding there was no basis for relating it back to 2008 (Tr. 543). Plaintiff claims that these limitations were present prior to his date last insured. Plaintiff testified that he used a cane at times, could stand in one spot comfortably for ten minutes, could sit for twenty or thirty minutes at a time, and could only walk for 150 yards at a time before experiencing pain (Tr. 563-64, 630). While Plaintiff testified to significant continuous limitations since his alleged onset date, the ALJ found Plaintiff's testimony not credible based on inconsistencies with other evidence in the record (Tr.

541). Plaintiff is not disputing the ALJ's credibility determination.[6] Although Plaintiff testified

that he could only stand and walk for a few minutes and over a very limited distance, a January

2007 treatment note indicated that Plaintiff was able to walk one to three miles (Tr. 542, 563-64,

630, 1138, 1146). Plaintiff testified in 2013 that could not sit long enough to watch a movie, but

in 2008 he testified that he spent most of the day watching movies on television (Tr. 572, 630).

Plaintiff testified in 2008 that he did not have grip strength, but the medical records do not

document clinical or objective findings supporting a loss of grip strength (Tr. 537, 567, 632) and

even Dr. Giles noted during his 2011 evaluation that Plaintiff had good grip strength (Tr. 1242).

Additionally, the ALJ found that Plaintiff's activities both before and after his date last

insured do not support a disability finding (Tr. 541). The administrative records documented

Plaintiff's activities included cutting wood, fishing, driving long distances, riding a motorcycle,

umpiring softball games, babysitting his grandson, hunting, weed eating, and riding a

lawnmower (Tr. 542, 571, 624, 627-28, 1206-10, 1092, 1211, 1222, 1268, 1282, 1433, 1435).

---

[6] Although the ALJ's "credibility" determination is not at issue in this matter, the SSA recently published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, effective March 16, 2016, which supersedes SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect on March 16, 2016, more than two years after the ALJ issued his decision on December 23, 2013, and therefore is not applicable to the ALJ's decision in this case. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 209 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007) ("We are not aware of any constitutional or statutory requirement that the Administration apply its [newly effective] policy interpretation rulings to appeals then-pending in federal courts, absent, of course, ex post facto or due process concerns not present here."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations." (citing 42 U.S.C. § 405(a))). The text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively.

These activities are inconsistent with Plaintiff's testimony and Dr. Giles's restrictions on standing, walking, kneeling, crouching, crawling, and climbing ladders. Plaintiff also reported that he had gone to Florida to help with hurricane recovery in 2004, gone bear hunting in 2004 and even deer hunting as late as 2008, gone swimming in 2005, and had climbed a ladder in 2006 (Tr. 571, 624, 938, 1061, 1134).

The ALJ also found that medical records prior to Plaintiff's date last insured showed no such disabling limitations as opined by Plaintiff or Dr. Giles. The medical evidence consisted primarily of records from the VA of Plaintiff's treatment for service-connected migraines and injuries to the right shoulder, back, and right knee (Tr. 536). The records support that Plaintiff successfully worked for many years after his military service with the alleged impairments (Tr. 854-55, 878). When he quit working in September 2003, the VA records indicate that Plaintiff reported he became angry and quit his job of 17 years and then tried to return to work (Tr. 541, 946). In January 2004, Plaintiff indicated that he had angrily resigned from his job (Tr. 946-47). In April 2006, he reported to consultative examiner Dr. Wike that he left his job due to multiple medical complaints, and in his DIB application, he claimed he stopped working because of medical conditions that made him unable to perform the job (Tr. 541, 869, 1090). In November 2010, Plaintiff reported that he was unemployed because of headaches although he reported having only one headache a month and less than half of them were "prostrating" (Tr. 541, 1259-61). *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (considering the fact that the plaintiff continued to work for two years after his accident and that the objective medical evidence did not support the plaintiff's allegations that his condition worsened during that two-year period).

Further, upon review of the medical records which are described in the ALJ's opinion, the records support only mild limitations and are not consistent with the disabling limitations that

Plaintiff believes should be found. The treatment records do not show that Plaintiff's shoulder impairment significantly deteriorated during the relevant period. For example, x-rays in July 2003 were unchanged from May 2002; x-rays in January 2004 showed no abnormalities; x-rays in early January 2007 showed only very mild degenerative changes in Plaintiff's left shoulder; and an MRI in July 2007 showed no changes from 2004 (Tr. 536-37, 972-74, 1143, 1202-03). Physical examinations generally documented a decreased range of motion so the ALJ accounted for this by limiting Plaintiff to lifting and carrying no more than 20 pounds and only occasionally reaching overhead (Tr. 535, 537).

Similarly, treatment notes during the relevant period regarding Plaintiff's back and right knee do not support Plaintiff's alleged disability (Tr. 536, 538). During the relevant period, x-rays of Plaintiff's lumbar spine showed only mild degenerative changes and some limitations to the range of motion in his lumbar spine (Tr. 536, 538, 973-74, 942, 935-37, 1153). X-rays of Plaintiff's right knee were unremarkable in October 2003 (Tr. 537, 973). In June 2005, Plaintiff reportedly injured his knee while walking down a riverbank to go swimming, and an earlier MRI showed a partial tear of the medial meniscus (Tr. 1060-61, 1076). In August 2005, Plaintiff had a diagnostic arthroscopy of his right knee, and by the end of August 2005, Plaintiff had a normal range of motion, no swelling or edema, normal motor strength in all extremities, and a normal gait (Tr. 1037-42, 1024-26).

In December 2005, Plaintiff wore a knee brace and reported occasionally using a cane (Tr. 935). He had a slight antalgic gait with mild swelling of the right knee and mild discomfort with range of motion testing of the lumbar spine (Tr. 538, 935-36). He had no limitation in motion in his right knee and no weakness, spasm, or tenderness in his back (Tr. 936). X-rays showed mild degenerative changes in his lumbar spine and a normal right knee (Tr. 538, 936-37). Plaintiff then fell from a ladder and aggravated his knee in October 2006 (Tr. 1134).

19

Subsequent x-rays of his right knee were negative, and x-rays of the lumbar spine showed only mild degenerative changes (Tr. 536, 537-538, 1142, 1153). Upon examination, Plaintiff had a normal gait, no muscle spasm, no muscle atrophy, no tenderness to palpation, and no guarding or pain with motion (Tr. 536, 1127, 1146-47). An MRI in July 2007 showed some improvement in Plaintiff's right knee as the right meniscus tear was less prominent than in prior scans (Tr. 538, 1202). To the extent that he found Plaintiff's complaints of disabling pain credible, the ALJ accounted for them by limiting Plaintiff to lifting and carrying no more than 20 pounds and allowing a sit/stand option at about 45 to 60 minute intervals (Tr. 536, 538).

Further, the consultative physical examination performed by Dr. David McConnell in April 2006 did not support Plaintiff's alleged disabling limitations. He noted that Plaintiff wore a knee splint and brace, was able to walk without assistance, and limped to the right (Tr. 1095, 1097). Plaintiff demonstrated full range of motion without pain in his ankles, left knee, hips, thoracic spine, elbows, writs, and left shoulder, had good motor strength in both upper extremities, showed some reduced range of motion of the lumbar spine, demonstrated no evidence of sensory or motor deficits of the lower extremities, and had full extension and full flexion of the right knee (Tr. 1097-98). An x-ray of the right knee was described as normal, and an x-ray of the right shoulder showed the surgical removal of the distal one-third of the right clavicle but no evidence of osteoarthritic changes (Tr. 1098). Dr. McConnell opined that Plaintiff could lift and/or carry 45 pounds occasionally, lift and/or carry 40 pounds frequently, and stand, walk, and/or sit with normal breaks for a total of at least seven hours in an 8-hour day (Tr. 538, 1099). These limitations were actually less restrictive than those assigned by the ALJ in the RFC.

Although medical sources opine on a claimant's RFC, ultimately it is the ALJ's responsibility to determine the RFC. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578

(6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(d)(2) & § 404.1546(c). Other than the inconsistencies in the weight applied to the opinions of the 2011 consultative examiners, Plaintiff does not contend that the ALJ improperly weighed the opinion testimony.[7] It is the function of the ALJ to resolve the conflicts between the medical opinions. *See Justice v. Comm'r of Soc. Sec.,* 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that [claimant] now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence.").

The Court does not agree with Plaintiff's assertions that Dr. Giles's 2011 examination and opinions relate back to Plaintiff's condition prior to the expiration of his dated last insured on December 31, 2008. "In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990) (citing to 42 U.S.C. § 423(a) and (c) and *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988)). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004); *May v. Astrue,* No. 4:10CV1533, 2011 WL 3490186, at *5 (N.D. Ohio June 1, 2011). "Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence 'relates back' to the claimant's limitations prior to the date last insured." *May*, 2011 WL 3490186 at *5; *see also Wirth v. Comm'r of Soc. Sec.,* 87 F. App'x 478, 480 (6th Cir. 2003) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.").

---

[7] Plaintiff has not challenged the ALJ's determination that Plaintiff's allegations of his disabling pain were not supported by the objective evidence and thus Plaintiff's testimony of his disabling symptoms was not entirely credible (Tr. 541). The ALJ's credibility analysis, however, is "inherently intertwined" with the RFC assessment. *See Poppa v. Astrue,* 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

"The related back evidence is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date." *May,* 2011 WL 3490186, at *5. As discussed above, I **FIND** that substantial evidence in the record prior to Plaintiff's date last insured supports the ALJ's determination that the 2011 consultative physical examination was inconsistent with evidence in the record and thus would not relate back to 2008. Accordingly, I **CONCLUDE** the ALJ properly discounted the 2011 physical consultative opinion as being beyond the date last insured.

## V.     CONCLUSION

Upon careful review of the administrative record and the parties' arguments and for the foregoing reasons,

1)  Plaintiff's motion for summary judgment [Doc. 14] is **DENIED**;

2)  The Commissioner's motion for summary judgment [Doc. 16] is **GRANTED**; and

3)  The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE